IN THE MATTER OF THE GUARDIANSHIP OF THE PERSON AND ESTATE OF MARY DALTON, an Incompetent Person. MARTHA HEAPHY, Guardian and Appellant, v. EMMET T. WALSH, Petitioner and Respondent.

No. 10076.
Submitted May 6, 1960. Decided August 19, 1960.
354 P.2d 1048.

Smith, Boone & Rimel, Missoula, for appellant. Russell E. Smith argued orally.

Emmet T. Walsh and Robert T. O'Leary, Anaconda, and Wellington D. Rankin, Helena, argued orally for respondent.

MR. JUSTICE ADAIR delivered the Opinion of the Court.

On September 10, 1957, Martha Heaphy, an elderly school teacher, residing in Anaconda, Montana, filed in the district court for Deer Lodge County, Montana, a petition requesting that she be appointed the guardian of the person and estate of her cousin, Mary Dalton, which estate the petitioner stated was of the estimated value of $76,000.

To represent her in drafting the petition and in instituting and prosecuting the proceeding, the petitioner, Martha Heaphy, retained and employed Emmet T. Walsh, a duly licensed and practicing attorney at law, residing and maintaining his law offices in Anaconda.

A day was set for the hearing of Miss Heaphy's petition, — due notice was given of the hearing, — citation was promptly issued and duly served upon Mary Dalton and the hearing held following which Mary Dalton was adjudged to be an incompetent person.

On October 4, 1957, Martha Heaphy was granted letters of guardianship for the person and estate of Mary Dalton and such guardian retained and employed Emmet T. Walsh, Esq. as and for her attorney whereupon Mr. Walsh instituted appropriate proceedings incident to such guardianship.

During the course of such guardianship proceedings it was discovered that the guardian periodically received dividend checks from certain corporations for which the stock certificates could not be found, as such certificates had either become mislaid or lost, and it was also discovered that some of the ward's stock certificates had been endorsed in blank, all of which occasioned and required prompt and extraordinary work and services on the part of Attorney Walsh, who immediately wrote all the corporations involved for a transcript of the stock holdings of the ward, Mary Dalton.

After a transcript of the ward's stock holdings had been obtained from nine different corporations a comparison check was made with existing holdings and thereby the lost or mislaid stock certificates were ascertained following which Attorney Walsh notified the New York Stock Exchange of the lost stock certificates and procured stop orders to prevent the transfer of the certificates in the event they had fallen into the hands of others. Thereafter Attorney Walsh submitted affidavits of loss to the transfer agent of each of the nine corporations and indemnity bonds were supplied at a cost to the ward's estate of approximately $5,500.

Thereafter replacement stock certificates were received by the ward's estate, the first of which were received in July 1958 and additional stock certificates were obtained each month thereafter during the remainder of that year the last being restored in December 1958.

The total of the restored stock amounted to 1806 shares valued at $155,479.88 and in January 1959, 100 shares of Montana Power stock, which had been endorsed in blank by the

ward, were restored and placed within the control of the guardian.

In addition to the above extraordinary services, Attorney Walsh, for over eighteen months carried on and attended to all other necessary details and proceedings incident to the guardianship.

On April 17, 1959, Martha Heaphy filed her first account as guardian wherein she accounted to the district court for the period from October 4, 1957, to April 14, 1959, for inventory and cash received in the total amount of $209,420.12 and at the same time said guardian petitioned the district court to determine and award a reasonable allowance and fee for her services as guardian and to also determine and award a reasonable allowance and fee for her said attorney, Emmet T. Walsh.

After the filing of her aforesaid first account and petition and prior to the hearing thereon, Martha Heaphy decided that she would not take or accept any fee whatever for the services rendered by her as guardian and that she would merely seek reimbursement from the estate for her own outlay and expenses incurred and she also expressed some doubt as to the amount of the fee that should be allowed for the professional services that had been rendered by her attorney, Emmet T. Walsh, and, to protect the estate of her ward, the guardian employed additional counsel to represent her interests at the hearing involving the determination of the amount of attorney's fees to be allowed Emmet T. Walsh.

The hearing on the guardian's account and petition was held June 12, 1959, at which time it was mutually agreed that the fact that an attorney's fee was then owing was not in question and concerning which matter the only question was as to the amount of such attorney's fee.

In her account and petition so filed the guardian failed to request the allowance of any specific amount as and for attorney's fees and she only petitioned "that a reasonable allowance be made for attorney's fees."

At the hearing, the testimony of seven duly licensed and practicing lawyers, residing in either Anaconda or Butte, Montana, qualified as expert witnesses and gave testimony on behalf of Attorney Emmet T. Walsh, as to what amount, under the circumstances shown to obtain in the instant action, would constitute a reasonable attorney's fee herein and each of said witnesses was cross-examined by the newly retained counsel then and there representing Martha Heaphy, the guardian.

In addition to the above expert testimony it was brought out at the hearing that there was a district court rule in that particular jurisdiction which set, as the attorney's fee in a guardianship proceeding, an amount equal to 5% of the total amount accounted for in the estate.

After hearing and considering all the evidence submitted at the hearing the Honorable William F. Shallenberger, district judge presiding, made and entered certain findings and an order settling the account of the guardian and determining and authorizing the payment of an attorney's fee to the guardian's counsel, the concluding paragraphs whereof read:

"* * * the Court, after hearing the evidence,

"Finds That All Of the statements in the said Account and Report are true and correct; that vouchers have been filed therein; that the total amount that the Guardian herein has accounted for during the period is Two Hundred Nine Thousand Four Hundred Twenty and 12/100 Dollars ($209,420.12); and that said Guardian has in her hands belonging to said Estate the sum of One Hundred Ninety-five Thousand Eight Hundred Eighty-four and 26/100 Dollars ($195,884.26) in cash, stocks, bonds and real estate; and it appearing that the Guardian has waived any claim to fee in Open Court, and it appearing that the sum of $10,200.00 is a reasonable and proper amount to be allowed as attorney fees herein to Emmett T. Walsh, Attorney for the Guardian.

"It Is Therefore Ordered, Adjudged And Decreed that the

First Annual Account of said Martha Heaphy, Guardian, be and the same is hereby approved, allowed and settled.

"It Is Further Ordered, Adjudged And Decreed that the said Guardian pay to Emmet T. Walsh the sum of $10,200.00 as and for Attorney Fees as Attorney for said Guardian."
,This is an appeal by Martha Heaphy from that portion of the above-quoted court order determining and allowing the attorney's fee to appellant's counsel.

Three specifications of error are listed in appellant's brief.

*Jurisdiction.* In her printed brief, the appellant contended that the trial court was without jurisdiction to fix the fee of the attorney for the guardian. On the oral argument of this appeal appellant's counsel, in open court, abandoned this specification and contention. Clearly such specification had no merit.

*Court Rule.* In her printed brief, the appellant next contends that the rule of the district court upon which that court based its order was invalid because: (a) it was not published; (b) it is contrary to law; and (c) it is based upon a misconception of the statute relative to guardian's fees in Veterans' Administration affairs.

The court rule upon which the attorney's fee, in the instant case, is based was announced and proclaimed in open court on May 6, 1958, by the Honorable Sid G. Stewart, then the duly appointed, acting and qualified district judge in and for the third judicial district of the State of Montana, wherein is situate all of the County of Deer Lodge. At that time, concerning the rules governing guardianship matters, Judge Stewart said:

"I might say to you gentlemen at this time that there is no Court Rule in this jurisdiction in regard to this matter. The Court Rules that we have at the present time show no rule on it, and I thought it would be well *to establish a rule at this time.*
\* \* \*

"I would like also for the record to show that in addition to the testimony received before the Court in this matter that the Veterans' Administration also allows a five percent fee for the

guardian and attorney, and the Court believes that that is an adequate and proper fee for both, and *will adopt that as a Court Rule for this Court from now on.*"

None of the contentions here made and presented by the appellant on this appeal respecting this court rule was raised in the district court and such court rule was introduced in evidence in the district court in the instant proceedings without objection.

Notwithstanding these facts we shall here consider appellant's contentions concerning the rule. First appellant contends the rule was not published as required by R.C.M. 1947, § 93-503, which states: "Rules adopted by any court take effect thirty days after their publication."

The mode of "publication" of court rules is not prescribed by the Montana statutes. Publication may be accomplished by the performance of any one of the various acts constituting publication as generally defined and understood. Webster's New International Dictionary (2d ed.), defines publication as "Act of publishing, or state of being published; public notification, whether oral, written or printed; proclamation".

Thus, on May 6, 1958, when Judge Stewart orally announced and proclaimed, in open court, that the 5 percent rule would be the court rule in his court he then and there "published" the rule. The rule, governing the attorney's fee to be allowed in this matter and in other similar matters, had been in full force and effect for over a year prior to the hearing in the instant case.

Next, the appellant challenges the validity of the rule upon the ground that the percentage allowed as a fee, pursuant to the court rule, is an unreasonable amount.

The rule announced and proclaimed shows that the amount of the fee to be allowed is founded upon a standard set up by the Veterans' Administration in guardianship matters in which the Administration is involved or interested. The question then arises as to whether the standard, so fixed and followed, is reasonable. The appellant urges that the standard set, i. e., 5 per-

cent is a maximum in Veterans' Administration affairs, but R.C.M. 1947, § 91-4812, provides:

"Compensation payable to guardians shall be based upon services rendered and shall not exceed five percent (5%) of the amount of moneys received during the period covered by the account. In the event of extraordinary services by any guardian, the court, upon petition and hearing thereon may authorize reasonable additional compensation therefor. A copy of the petition and notice of hearing thereon shall be given the proper office of the veterans' administration in the manner provided in the case of hearing on a guardian's account or other pleading. No commission or compensation shall be allowed on the moneys or other assets received from a prior guardian nor upon the amount received from liquidation of loans or other investments."

Thus the 5 percent, while a maximum amount, is generally accepted and has received legislative sanction. Appellant argues that this amount is unreasonable and appears disproportionate when the ward's estate is of substantial value, but in view of the expert testimony and other evidence submitted to the trial court we find no merit in such contentions.

The last point urged by the appellant is that the trial court in adopting its rule has misconstrued the statute, R.C.M. 1947, § 91-4812, supra, and that the 5 percent figure is a maximum applicable to income only. A reading of District Judge Sid G. Stewart's proclamation shows that he used the Veterans' Administration rule solely as a guide. He never exceeded the maximum there set out, he established it as his rule. We cannot see where the setting of a fee at the maximum amount generally is erroneous. There is no rule requiring that the amount be set at a minimum figure. As applied by Judge Stewart when he proclaimed the rule, the amount was based upon corpus and income reported. A reading of section 91-4812, supra, amply supports this interpretation of the statute. It states "money received" which generally includes both "corpus" and "income". We so interpret the statute.

We find no merit whatever in any of appellant's contentions challenging the validity of the district court's rule. The rule was in full force and effect at the time that this hearing was held, and the Honorable William F. Shallenberger, a duly elected, qualified, and acting judge of the fourth judicial district, called in to preside because of the disqualification of Judge Stewart, followed the court rule which prevailed in the jurisdiction wherein the hearing was held as he should and he correctly set and determined the attorney's fee pursuant to that rule.

■ Since the judgment rendered by Judge Shallenberger was based upon the court rule which controlled the issue before the court in which he was then presiding, the question of whether the fee was shown to be reasonable is not now before this court. Notwithstanding, appellant's brief devotes considerable argument to that point, hence, we direct attention to the record before us on this appeal which contained an abundance of evidence which establishes that the fee allowed herein was and is a reasonable one.

*Splendid Services Rendered.* At the hearing before Judge Shallenberger the guardian and appellant, Martha Heaphy, testified as follows:

"Q. Of course, now, there is absolutely no objection, as far as you are concerned, that Mr. Walsh be reimbursed for any costs that he has advanced in this estate, is that right? A. I definitely think that he should have a fair reimbursement, by all means. *I think that he did a very fine job in compiling it,* and I think that everybody should be paid for their work.

"Q. Except yourself? A. Well, I feel that — you know, school teachers are never paid.

"Q. And you have always insisted that you intend to waive your fee in this matter? A. Yes. All that I am asking for is just the actual money that I have expended.

"Q. Just what you have expended? A. Yes. * * *

"Q. I believe you stated that you felt that Mr. Walsh not

only should be reimbursed for the expenses that he had advanced in the guardianship, *but you also definitely feel that he is entitled to a fee for the splendid services that he has rendered,* is that correct? A. Would you state that again, please?

"Q. You stated a minute ago that you felt that Mr. Walsh was entitled, not only for the expenses that he had advanced in the guardianship, but *you also definitely feel that he is entitled to a fee for the splendid services that he has rendered this guardianship estate?* A. *Yes, I do."*

The evidence submitted amply supports the fee allowed and there was and is no evidence that in a guardianship matter of this magnitude and proportion, a lesser fee would have been reasonable. The fee allowed by the district court from the evidence produced, if judged on the basis of reasonableness, was and is the minimum fee, "for the labourer is worthy of his hire."

District Judge Shallenberger, fixing and allowing the fee upon the basis of the court rule, ably summed up the evidence and the basis for his ruling when he said:

"This is not just a case of a lot of lawyers testifying and buttressing and ganging up upon some poor incompetent's estate, as I see it, but is simply the case of a rule which has been enunciated, and has been in operation in the district here."

The order of the district court setting and allowing the attorney's fee in this matter is affirmed.

MR. JUSTICE ANGSTMAN and THE HONORABLE W. W. LESSLEY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY concur.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES dissent.

MR. JUSTICE ANGSTMAN specially concurring.

I agree with the foregoing opinion of Mr. Justice Adair, but

in view of the dissenting opinion of Mr. Justice Harrison I desire to add the following:

In addition to the services rendered by Attorney Walsh, as pointed out in the foregoing opinion, he recovered the sum of $600 from Louis A. Toucher together with a promissory note in which Toucher promised to pay the balance due the estate in the sum of $440. Attorney Walsh also prepared a complaint to foreclose a mortgage by Robert and Leona M. Dolan for the protection of the ward's estate.

When Mr. Walsh asked for an allowance for his attorney's fees he did not ask for a specified amount, but asked for such an allowance "as to the court may seem just in the premises." Many attorneys with many years of practice gave testimony herein supporting a fee of $10,200, as being reasonable. Some placed the value of the services at still a higher figure and no one testified that a smaller figure would be reasonable.

The official order of the district court made no reference to a court rule, but recited: "It appearing that the sum of $10,200 is a reasonable and proper amount to be allowed as attorney's fees herein to Emmet T. Walsh." The court then ordered that sum paid to Mr. Walsh. The official order of the court leaves at least some doubt as to whether the court rule mentioned in the conversation was the basis for the order. Had the rule been applied strictly, then the fee instead of being $10,200 would have been $10,471, since the total sum accounted for in the estate was $209,420.

Rule or no rule, I think the order of Judge Shallenberger should be sustained, as I think there are circumstances which support the conclusion that he ruled, on ample evidence, that the fee which he fixed was a reasonable one.

MR. CHIEF JUSTICE HARRISON dissenting:

I dissent. I cannot agree with the majority opinion wherein it holds there is a court rule with regard to attorneys' fees. I deem this very important since it is very clear from the record

that the presiding judge felt he was bound by such rule in fixing the fees of the attorney.

I concede that our statutes do not provide a mode of publication, but it appears to me that more than an oral pronouncement by a judge from the bench during a hearing in a different cause should be required. The proof here of the so-called rule was made by a transcript of the court reporter's notes in another cause. The attorney appearing for the guardian in resisting the petition for attorney's fees stated in court at the time of this hearing that he did not recall such a rule and he is a practicing attorney of many years standing at the local bar.

A court rule would be an order and there is here no showing that the order containing the rule was entered in the minute book as required by section 91-4301, R.C.M. 1947, which provides in part: "All orders of the court or judge must be entered at length in the minute-book of the court kept for probate proceedings." The provisions of the probate code so far as practice is concerned apply to guardianship proceedings under section 91-5210, R.C.M. 1947, which also provides in part: "All orders must be entered in the minutes of the court kept for probate proceedings * * *".

In State ex rel. Eden v. Schneider, 102 Mont. 286, 57 P.2d 783, 786, this court said:

"It is true, as stated by Mr. Chief Justice Brantly in his concurring opinion in the Little Case, *that rules should be promulgated which advise litigants, with some degree of certainty,* as to which judge will try their cause." Emphasis supplied.

How would litigants or their counsel be advised of a rule orally pronounced, as in the instant cause, by a judge from the bench and buried in the untranscribed notes of the court reporter?

"The records of the court are the only competent evidence of the existence of a rule of court, and cannot be shown by affidavit; nor will its existence be presumed." 21 C.J.S., Courts, § 180, pp. 288, 289.

"It has been laid down that rules of court must be definitely stated, and promulgated formally, at least rules framed to guide and govern litigants, and should not be in force until after reasonable publicity and notice thereof. So it is very generally held that the general rules of practice enacted by the courts must be embodied in writing and adopted of record." 21 C.J.S., Courts, § 173, p. 275.

"Rules of court adopted for the dispatch of business and the impartial administration of justice must be written. Since, when legally adopted and promulgated, they have the effect of positive laws, *they ought not only to be formally promulgated, but they should be definitely stated, published, and made known in some permanent form.*" Emphasis supplied. 14 Am.Jur., Courts, § 154, p. 360.

This court has held that rules have the effect of law. See Roush v. District Court, 101 Mont. 166, 53 P.2d 96.

From the record it is clear that the presiding judge felt he was bound by the so-called rule as is evidenced by the following quotation therefrom:

"The Court: * * * and the fee is still five percent, and the Court having announced it, this Court would feel rather bound by that rule, that is, the Court should put in effect its own rules, and the Court should stand by them.

"Mr. Dwyer: Well, I was not aware, your Honor, until today that that had been announced by Judge Stewart, and I had not received — I was probably present at the time, but hadn't really paid any attention to it, because it wasn't involved in a fee that I was to receive.

"The Court: Yes, I know, those things come up, and it is difficult — well, here, it is in the evidence that the Judge of this Court, the permanent Judge of this Court, has announced that as a rule, and without any exceptions, which is similar to the one which is done in probates, but I might say this, even so, even if it probably ought to be a different rule, and maybe if I were making it, it would be a different rule, and I certainly

would begin, I think, with a higher percentage than five percent, and then gradually bring it down to a lower one, of course, that is, if I were making the rule, but, notwithstanding that fact, also we have here a situation also unique, in that so many of the assets of the estate were not even known to exist at the time, and it always creates a great responsibility and a worry and a concern to have to go through all of the stock books, and counsel was certainly fortunate in this case that he had a client of intelligence and ability, who could do an awful lot of that, what we might call the 'leg-work' of bookkeeping for counsel, because she obviously did do that, and did a good job and a helpful one. But, all in all, I think the fee should be set at $10,200.00, and I don't think there is any question but what that is what ought to be done. This is not just a case of a lot of lawyers testifying and buttressing and ganging up upon some poor incompetent's estate, as I see it, but it is simply the case of a rule which has been enunciated, and has been in operation in the district here.

''Mr. Dwyer: Yes, you see, your honor, I wasn't aware of that until today, that that had been the rule enunciated in this district and court by Judge Stewart. You see, Judge Taylor, when he used to enunciate a new rule of Court, he would set that rule out in writing to the attorneys, and that was the practice followed by Judge Taylor, but apparently Judge Stewart had enunciated this rule in Court, and that didn't come to my attention that day, even though I was undoubtedly present in court.''

I feel that counsel was entitled to a reasonable fee based upon the services he rendered to the guardian, but I further feel that it should have been determined upon that basis and not upon observance of the so-called court rule, which in my opinion did not exist.

Neither do I concur in the majority holding that ''money received'' as used in section 91-4812, R.C.M. 1947, should be

interpreted to include both "corpus" and "income." I would interpret it to mean income".

I would annul that part of the order which determined the attorney's fees and return the cause to the district court for a determination of a reasonable fee without reference to any so-called rule of court.